**In re Edward F. FREUND and Joyce M. Freund, Debtor.**

**Edward F. Freund and Joyce M. Freund, Plaintiffs,**

**v.**

**United States of America, Department of the Treasury, By and Through the Internal Revenue Service and State of Connecticut, Department of Revenue Services, Defendants.**

**Bankruptcy No. 99–3299–BKC–SHF.**
**Adversary No. 00–3229–BKC–SHF–A.**

United States Bankruptcy Court, S.D. Florida.

May 9, 2001.

Chad P. Pugatch, Ft. Lauderdale, FL, for plaintiffs.

Tammie R. Adams, Washington, DC, for defendants.

Scott M. Grossman, for interpleader, United States.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LARRY L. LESSEN, Bankruptcy Judge.

THIS CAUSE having come on to be tried before the Court on Tuesday, March 20, 2001, upon the Complaint of the Plaintiffs, Edward F. Freund and Joyce M. Freund ("Freunds"), seeking declaratory relief to determine dischargeability of their income tax liabilities for 1994 and 1995 against the United States of America, Department of the Treasury, By and Through the Internal Revenue Service ("IRS") and against the Connecticut Department of Revenue Services ("Department") and for turnover of income tax refunds retained by the IRS. A Final Default Judgment having been entered against the Department on January 25, 2001 and this cause having proceeded to trial against the IRS, and the Court having heard the testimony of the witnesses and observed the candor and demeanor thereof, having examined the evidence, having heard argument of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

Plaintiffs, Edward F. Freund who is sixty-five years old and Joyce M. Freund who is sixty-three years old ("Freunds"), are the Debtors in the Chapter 7 proceeding by virtue of a Voluntary Petition filed on October 26, 1999. The Freunds have been married for forty-one years and at the time of the filing of the Voluntary Petition were and are still residing in Stuart, Florida. Prior to their move to Stuart, Florida they resided in Connecticut where they owned a profitable printing company. In 1994, the Freunds sold their home and in June 1995, the Freunds sold their business in Connecticut and moved to Florida. As a result of the sale of their home and their business, the Freunds incurred a tax liability to the IRS as stated in the proof of claim filed on December 9, 1996, as follows:

| Kind of Tax | Tax Period | Tax Due | Interest to Petition Date |
|---|---|---|---|
| Income | 12/31/94 | $ 71,420.00 | $10,303.56 |
| Income | 12/31/95 | $ 53,113.00 | $ 2,329.72 |
| | | $124,533.00 | $12,633.28 |

When the Freunds sold their business they took back a promissory note for a large portion of the purchase price and from the monthly payments due on the note they expected to pay their tax liability and their living expenses. The buyer of the business began missing monthly pay-

ments almost immediately and eventually filed personal and corporate bankruptcy in the Fall of 1996. The Freunds commenced collection efforts against the buyer and after much effort and litigation expense, the Freunds were able to foreclose and sell the equipment and the buyer's home but only realized about fifty cents on the dollar on the debt owed to them by the buyer.

The Freunds only source of income in October of 1996 was the monthly payments due to Freunds from the sale of the business. On October 15, 1996, when it became obvious that they could not depend on the regular monthly income from the note to pay for the tax liability incurred from the sale of the home and business and to pay for their living expenses, the Freunds filed a joint voluntary petition under Chapter 13. On December 17, 1996, the Chapter 13 plan was confirmed. The Freunds utilized funds that they obtained from their collection efforts against the buyer to fund the Chapter 13 plan and pay for their living expenses until they could get jobs. The Freunds intended to pay in full their 1994 and 1995 tax liability during the Chapter 13 proceeding and did pay back over fifty percent of the tax liability amounting to $69,202.11.

After the filing of the Chapter 13 petition, the Freunds tried to get jobs in order to follow through on the plan payments since they could foresee running out of funds but they were unsuccessful in obtaining viable employment. Mr. Freund tried the want ads, search firms, and head hunters, but they were just not looking for people over 40, and much less anyone that was at that time close to 60. He made a good faith effort to earn money to fund the plan, including, selling insurance, telemarketing, and even worked as a toll taker on the Florida turnpike for minimum wage. Mrs. Freund tried to help out by working for several "temp agencies" but none of those jobs materialized into a permanent position.

In or about the first quarter of 1998, the Freunds received the sum of approximately $200,000 from the foreclosure of the buyer's home in Connecticut. But in desperation and in an effort to generate a source of income to live on and to make the plan payments, Mr. Freund took a three-day course with the nationally known Wade Cook on investing and making money in the stock market and invested and lost in the stock market the last monies received from their collection efforts against the buyer amounting to approximately $200,000. Mr. Freund admitted under oath that in hindsight it was not a wise thing to do.

Eventually the outstanding liability became overwhelming for the Freunds to pay back and the Chapter 13 was dismissed on March 3, 1999 after over two years of making plan payments. Nearly eight (8) months after their Chapter 13 was dismissed, the Freunds sought bankruptcy relief a second time by filing a joint voluntary petition under Chapter 7 and on March 22, 2000, they were granted a discharge under § 727 of title 11, United States Code.

The Freunds made demand upon the IRS and the Department to acknowledge the dischargeability of the taxes. However, the IRS claimed that the Freunds' income tax liabilities for 1994 and 1995 were not discharged contending that the time periods specified in § 507(a)(8)(A)(i) and § 523(a)(1)(A), were tolled during the period the Freunds' first bankruptcy was pending. The Freunds then filed this complaint to determine the dischargeability of the 1994 and 1995 taxes, as well as to for turnover of income tax refunds retained by the IRS. A Final Default Judgment was entered against the Department

on January 25, 2001. And this cause proceeded to trial against the IRS.

The Court finds that the Freunds made a good faith effort to pay the IRS what they were obligated to pay but were unable to complete payment due to unforeseen circumstances. Pursuant to the IRS proof of claim filed on December 9, 1996, the Freunds owed the IRS approximately $137,166.28 of which they paid $69,202.11 through the Chapter 13 plan. The Freunds also paid to the Chapter 7 Trustee $16,500.00 as a result of settlement of a potential fraudulent transfer action and their biggest motivation to settle with the Trustee was their understanding that the IRS would be entitled to most, if not all, of the remaining settlement proceeds after payment of administrative expenses. The IRS also received $1518.00 that it retained from the Freunds 1998 and 1999 tax refunds. It is an important factor with the Court that the Freunds were also willing to take a loan in an attempt to settle their debt with the IRS by offering a $20,000.00 cash payment and further offered to relinquish approximately $67,000.00 in capital loss carry forwards, which the IRS refused.

The Court finds that based upon the overall conduct of the Freunds, the equities favor the Freunds and dischargeability of the taxes. The Court finds that it was not an unreasonable expectation of Mr. Freund to think that he could make money in the stock market, given the existing market conditions at that time and that making such investment did not show bad faith by the Freunds. The Court cannot overlook the fact that even given the Freunds' age, they were still willing to take menial jobs in an effort to make the Chapter 13 plan payments. Even after the Chapter 13 was dismissed, and the Freunds received their discharge under the Chapter 7, the Freunds were still will-ing to take a loan and attempt to settle with the IRS.

### CONCLUSIONS OF LAW

Section 507 provides in pertinent part:

(a) The following expenses and claims have priority in the following order: ..

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) A tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

Under Section 507(a)(8)(A)(i) unpaid income taxes are entitled to "priority status" so long as the tax returns were due less than three years before the filing date of the bankruptcy petition. The Bankruptcy Code does not expressly provide for the tolling of the statute, however, the cases interpreting section 507(a)(8)(A)(i) relying on different sections of the Code and different theories have concluded that the statute may be tolled during the pendency of a debtor's prior bankruptcy.

■ The Eleventh Circuit has spoken clearly on the issue of the tolling of the statute. *In re Morgan*, 182 F.3d 775 (11th Cir.1999) is the controlling case in this Circuit which permits a bankruptcy court to exercise its equitable powers to toll the three-year priority period defined in 11 U.S.C. § 507(a)(8)(A)(i), where appropriate, during the pendency of a debtor's prior bankruptcy proceeding. The *Morgan* Court concluded that "11 USC § 105(a) is broad enough to permit a bankruptcy court, exercising its equitable powers, to toll the three-year priority period, where appropriate, during the pendency of

a debtor's prior bankruptcy proceeding." *Id.* at 779.

11 U.S.C. § 105(a) provides in pertinent part that:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

█ As the Eleventh Circuit held in *Morgan,* the equities will generally favor the government in such cases due to the congressional intent, which favors allowing the government sufficient time to collect taxes, and the fear that taxpayers may abuse the bankruptcy process in order to avoid paying taxes. *Id.* at 779–780. There may be factual scenarios, however, in which the equities favor the taxpayer. *Id.* at 780.

█ The IRS in this case contends that the ultimate burden of proof was on the Freunds to show that the equities weighed in their favor. In interpreting *Morgan,* this Court concludes that the ultimate burden of proof was with the IRS to show why there should be a tolling of the statute. However, the Court finds that regardless of who has the burden of proof in this case, the real issue is whether it would be equitable to discharge these taxes in light of the obligation of all taxpayers to pay their taxes. The equities in the instant case are in favor of the Freunds no matter which party has the burden of proof, and the Court would therefore find in favor of the Freunds no matter which side is determined to have the ultimate burden. The evidence would be the same.

From the evidence presented at trial and on the record, the Court finds that the Freunds have exhibited a good faith effort and therefore the equities favor them and the dischargeability of the taxes. Even their investment and subsequent loss of approximately $200,000.00 in the stock market which in hindsight proved unwise, did not show bad faith on the their part. As a result thereof, any and all income tax liabilities owed to the IRS for tax years 1994 and 1995 by the Freunds including interest and penalties thereon, are hereby determined to be dischargeable and are, in fact, discharged in bankruptcy pursuant to the discharge order entered by the Court on March 22, 2000.

Based upon the discharge, the IRS shall turnover to the Freunds their refunds due on tax returns for the years 1998 and 1999 in the amount of $1518.00 plus accrued interest calculated at the legal rate.

The Court will enter a separate Final Judgment in accordance with these Findings of Fact and Conclusions of Law.